AUSTIN, JR., vs. STATE; LYLE vs. STATE.

1. The act of 1874, which provided that no manager of elections, or other person, should receive taxes on election day, except the tax collector, was amendatory of an act passed in 1862, to alter and amend the revenue laws of this state. It was not a criminal enactment; nor was any other penalty provided by it than the loss of a vote. Nor did the act of 1878, Code, §4568 (a), render a person criminally liable who paid a tax execution to a constable in whose hands it was for collection, on the day of the election, and then voted.

(a) Penal laws are to be strictly construed in behalf of the defendant.

2. Where execution had been issued for taxes, and placed in the hands of a constable for collection, payment to him on the day of election was payment to an officer authorized by law to receive it, who was *pro hac vice* the tax collector, and it was never intended that such payment should be made illegal

(a.) Besides, in these cases there was no intention to violate the law.

September 11, 1883.

Criminal Law. Voting. Tax. Constable. Laws. Before Judge COBB. City Court of Clark County. April Term, 1883.

Reported in the decision.

E. K. LUMPKIN, for plaintiffs in error.

SYLVANUS MORRIS, solicitor city court, by brief, for the state.

JACKSON, Chief Justice.

The defendant was indicted for the offence of illegal voting, in that he had not paid all taxes, which, since the adoption of the present constitution of this state, had been required of him previous to the year in which an election was held for sheriff, in the county of Clark, but had voted without so paying; the indictment being under section 4568 of the Code.

On the day of the election he did pay the taxes to a constable who had the *fi. fa.* for taxes in his hands for collection; but the act of 1874, in the following words, prohibits the payment of taxes on the day of election to any person except the tax collector:

"An act to amend section four of an act to alter and amend the revenue laws of this state, and to provide a penalty for the violation thereof.

"Be it enacted, etc., that section four of an act to alter and amend the revenue laws of this state, and to provide a penalty for the violation thereof, approved December 15th, 1862, be amended by adding after the word "officers," in the tenth line, the following clause: 'And it shall not be lawful for any manager of an election, or other person, to receive any money for taxes on the day of election, except the tax collector; and if any voter shall vote who has not paid his taxes, his vote shall be illegal, and the commissioners who consolidate their returns of the election, shall not count such votes in making out the return.'"

The facts were, that the defendant, on the day of election, paid his taxes to a constable who had received the *fi. fa.* for taxes for collection from the tax collector, and the presiding judge held that he was guilty of the crime of illegal voting, because he did vote after so paying his taxes; and the question is, was he guilty of that offence, and punishable under section 4568 (a) of the Code?

That section was codified from an act passed in 1878, four years after the act of 1874, and is in these words, on this branch of the offence of illegal voting:

"Any person who shall hereafter vote at any such election (alluding to elections for the legislature and county officers),   *   *   *   who has not paid all taxes which, since the adoption of the present constitution of this state, have been required of him previous to the year in which said election occurs, and which he has had an opportunity of paying, agreeably to law   *   *   *   shall be indicted, and on conviction punished," etc.

The act of 1874 · provides for no indictment for illegal voting, in paying taxes on election day; no prior act provided for it. The act of 1862, of which the act of 1874 is amendatory, contains no such penalty, but totally different punishment. The only penalty alluded to in the act or title of the act of 1874 is that the vote shall not be counted, and thus the voter shall lose his franchise. It could not possibly have reference to the penalty provided four years after, and codified in section 4568 (a), of being indicted and punished under that section; and therefore we think that the court erred in holding that he was punishable in this way under the act of 1878, in section 4568 (a) of the Code. Penal laws are strictly construed in behalf of the defendant, and this rule certainly excludes the idea that the general assembly, in 1878, had in contemplation the payment of taxes on the day of the election at all.

2. But let all this pass, and we are quite clear that if the defendant had been indicted under the act of 1874, and that act had authorized it, or if the words in the act of 1878 "or which he had an opportunity of paying agreeably to law," embraced in it the payment of taxes on the day of the election to any person but the tax collector, and made such payment no payment, still the court, we think, ruled erroneously on the facts made by this record. The collector of this tax that day was this constable; to all intents and purposes he was the tax collector. The tax had passed from the hands of the tax collector, before exe-

cution, into that of the constable, as the officer of the law clothed with power to collect and receive it, and payment of this *fi. fa.* to this officer was never intended to be made illegal.

Besides, it is clear that there was no intention to violate the law. When told by the managers that he could not vote because his name was on the defaulters' list, and he had not paid taxes, he asked who had the tax *fi. fa.*, and was told that one of two constables had it. He asked one if he had it, and finding he did not, but being informed by him that the other had it, he went to him, who hunted it up among his papers, where it had been for some time, with other *fi. fas.* for taxes; and defendant paid it off and took it up, and was told by the constable that it was all his taxes, and that he could vote; and thereupon he did vote. Surely there is no criminal intent in the case; and the fact that he did vote, construed in connection with the other facts, and in the light of those facts, proves that he was innocent of criminal intent and of crime.

The case of Lyle is controlled by the case of Austin *vs.* The State, just decided.

Judgment reversed in both cases.